AF Approval

Chief Approval

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 5:22-cr-63-GAP-PRL

DAWN RAE DEMPSEY

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by

Roger B. Handberg, United States Attorney for the Middle District of Florida,

and the defendant, Dawn Rae Dempsey, and the attorney for the defendant,

Douglas J. Stamm, Esquire, mutually agree as follows:

### A.   Particularized Terms

1.   Count Pleading To

The defendant shall enter a plea of guilty to Count One of the

indictment. Count One charges the defendant with theft of government funds,

in violation of 18 U.S.C. § 641.

2.   Maximum Penalties

Count One carries a maximum sentence of 10 years

imprisonment; a fine of not more than $250,000, or twice the gross gain

caused by the offense, or twice the gross loss caused by the offense, whichever

is greater; a term of supervised release of not more than 3 years; and a special

Defendant's Initials

monetary assessment of $100.  With respect to certain offenses, the Court shall

order the defendant to make restitution to any victim of the offense, and with

respect to other offenses, the Court may order the defendant to make

restitution to any victim of the offense, or to the community, as set forth

below.

    3.    <u>Elements of the Offense</u>

The defendant acknowledges understanding the nature and

elements of the offense with which defendant has been charged and to which

defendant is pleading guilty.  The elements of Count One are:

<u>First</u>:    the money or property described in the indictment belonged to the United States

<u>Second</u>:  the Defendant knowingly converted the money or property to his own use or to someone else's use;

<u>Third</u>:    the Defendant knowingly and willfully intended to Deprive the United States of the use or benefit of the money or property; and

<u>Fourth</u>:  the money or property had a value greater than $1,000.

    4.    <u>No Further Charges</u>

If the Court accepts this plea agreement, the United States

Attorney's Office for the Middle District of Florida agrees not to charge

defendant with committing any other federal criminal offenses known to the

Defendant's Initials _____      2

United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

5.      Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full restitution to the Social Security Administration in the amount of $112,661.

6.      Restitution to Persons Other Than the Victim of the Offense of Conviction - Agreed Upon Amount

Pursuant to 18 U.S.C. §§ 3663(a)(3) and/or 3663A(a)(3), defendant agrees to make restitution to the United States Coast Guard in the amount of $167,301.76.

7.      Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

8.    Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, the $112,661 in proceeds the defendant admits she obtained as the result of the commission of the offense to which the defendant is pleading

Defendant's Initials _DH_                    4

guilty.  The defendant acknowledges and agrees that:  (1) the defendant obtained this amount as a result of the commission of the offense, and (2) as a result of the acts and omissions of the defendant, the proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence.  Therefore, the defendant agrees that, pursuant to 21 U.S.C. § 853(p), the United States is entitled to forfeit any other property of the defendant (substitute assets), up to the amount of proceeds the defendant obtained, as the result of the offense(s) of conviction.  The defendant further consents to, and agrees not to oppose, any motion for substitute assets filed by the United States up to the amount of proceeds obtained from commission of the offense and consents to the entry of the forfeiture order into the Treasury Offset Program.  The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

The defendant additionally agrees that since the criminal proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence, the preliminary and final orders of forfeiture should authorize the United States Attorney's Office to conduct discovery (including depositions, interrogatories, requests for production of documents, and the issuance of subpoenas), pursuant to Rule

Defendant's Initials _DLD_                    5

32.2(b)(3) of the Federal Rules of Criminal Procedure, to help identify, locate, and forfeit substitute assets.

The defendant also agrees to waive all constitutional, statutory, and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government.  Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered.  In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all substitute assets and to transfer custody of such assets to the United States before the defendant's sentencing.  To that end, the defendant agrees to

Defendant's Initials                 6

make a full and complete disclosure of all assets over which defendant exercises control, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets.  The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States.  The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to any substitute assets before the defendant's sentencing.  In addition to providing full and complete information about substitute assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

Defendant's Initials           7

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

## B.  **Standard Terms and Conditions**

### 1.  Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663.

 Defendant's Initials                8

The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

2.   Supervised Release

The defendant understands that the offense to which the defendant is pleading provides for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.   Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed

Defendant's Initials                     9

from the United States, denied citizenship, and denied admission to the United States in the future.

4.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.    Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that her financial statement and disclosures will be complete, accurate and truthful and will include all assets in which she has any interest or over which the defendant exercises control, directly or indirectly, including

Defendant's Initials                     10

those held by a spouse, dependent, nominee or other third party. The

defendant further agrees to execute any documents requested by the United

States needed to obtain from any third parties any records of assets owned by

the defendant, directly or through a nominee, and, by the execution of this

Plea Agreement, consents to the release of the defendant's tax returns for the

previous five years. The defendant similarly agrees and authorizes the United

States Attorney's Office to provide to, and obtain from, the United States

Probation Office, the financial affidavit, any of the defendant's federal, state,

and local tax returns, bank records and any other financial information

concerning the defendant, for the purpose of making any recommendations to

the Court and for collecting any assessments, fines, restitution, or forfeiture

ordered by the Court. The defendant expressly authorizes the United States

Attorney's Office to obtain current credit reports in order to evaluate the

defendant's ability to satisfy any financial obligation imposed by the Court.

6. Sentencing Recommendations

It is understood by the parties that the Court is neither a party to

nor bound by this agreement. The Court may accept or reject the agreement

or defer a decision until it has had an opportunity to consider the presentence

report prepared by the United States Probation Office. The defendant

understands and acknowledges that, although the parties are permitted to

Defendant's Initials ____                    11

make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7. Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c)

Defendant's Initials _____      12

the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

     8.   <u>Middle District of Florida Agreement</u>

     It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

     9.   <u>Filing of Agreement</u>

     This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

     10.   <u>Voluntariness</u>

     The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other

than the concessions contained herein), and without threats, force,

intimidation, or coercion of any kind.  The defendant further acknowledges

defendant's understanding of the nature of the offense or offenses to which

defendant is pleading guilty and the elements thereof, including the penalties

provided by law, and defendant's complete satisfaction with the representation

and advice received from defendant's undersigned counsel (if any).  The

defendant also understands that defendant has the right to plead not guilty or

to persist in that plea if it has already been made, and that defendant has the

right to be tried by a jury with the assistance of counsel, the right to confront

and cross-examine the witnesses against defendant, the right against

compulsory self-incrimination, and the right to compulsory process for the

attendance of witnesses to testify in defendant's defense; but, by pleading

guilty, defendant waives or gives up those rights and there will be no trial.

The defendant further understands that if defendant pleads guilty, the Court

may ask defendant questions about the offense or offenses to which defendant

pleaded, and if defendant answers those questions under oath, on the record,

and in the presence of counsel (if any), defendant's answers may later be used

against defendant in a prosecution for perjury or false statement.  The

defendant also understands that defendant will be adjudicated guilty of the

offenses to which defendant has pleaded and, if any of such offenses are

Defendant's Initials _____          14

felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.   Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12.   Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials                     15

13.    Certification

The defendant and defendant's counsel certify that this plea

agreement has been read in its entirety by (or has been read to) the defendant

and that defendant fully understands its terms.

DATED this ___6___ day of December, 2022.

ROGER B. HANDBERG
United States Attorney

_____
Dawn Rae Dempsey
Defendant

Hannah Nowalk
Assistant United States Attorney

For Robert
Bodnar, Jr

_____
Douglas J. Stamm, Esquire
Attorney for Defendant

Robert E. Bodnar, Jr.
Assistant United States Attorney
Chief, Ocala Division

Defendant's Initials _____          16

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 5:22-cr-63-GAP-PRL

DAWN RAE DEMPSEY

## PERSONALIZATION OF ELEMENTS

Do you admit that the money described in the indictment belonged to
the United States Social Security Administration?

Do you admit that beginning on or about December 3, 2015, and
continuing through on or about February 3, 2021, in the Middle District of
Florida, you knowing converted that money to your own use?

Do you admit that you knowingly and willfully intended to deprive the
United States of the use of that money?

Do you admit that the money had a value greater than $1,000,
specifically, $112,661?

Defendant's Initials _____                    17

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA

v.                                         CASE NO. 5:22-cr-63-GAP-PRL

DAWN RAE DEMPSEY

### FACTUAL BASIS

Dawn Rae Dempsey's father, E.D., received money from the Social
Security Administration (SSA) as a Retirement and Survivors Insurance (RSI)
beneficiary. E.D. passed away on November 3, 2015.

The SSA was not notified and therefore was unaware of his death. SSA
benefits continued to be electronically deposited into E.D.'s bank account. In
February 2021, the SSA completed an audit. They discovered that E.D. was
deceased. His SSA benefits ceased in February 2021.

The SSA notified their treasury department about the overpayments.
The treasury was unable to recollect the SSA overpayments because the funds
were no longer in the bank account. They notified the office of the inspector
general to investigate.

The investigation showed that from December 3, 2015, until February
3, 2021, the SSA deposited 63 SSA payments into E.D.'s bank account totally
$112,661 in overpayments, as detailed below:

Defendant's Initials                 18

| Payment Date | Deposit Amount |
|---|---|
| 12/3/2015 | $1,753 |
| 1/3/2016 | $1,753 |
| 2/3/2016 | $1,753 |
| 3/3/2016 | $1,753 |
| 4/3/2016 | $1,753 |
| 5/3/2016 | $1,753 |
| 6/3/2016 | $1,753 |
| 7/3/2016 | $1,753 |
| 8/3/2016 | $1,753 |
| 9/3/2016 | $1,753 |
| 10/3/2016 | $1,753 |
| 11/3/2016 | $1,753 |
| 12/3/2016 | $1,753 |
| 1/3/2017 | $1,753 |
| 2/3/2017 | $1,753 |
| 3/3/2017 | $1,753 |
| 4/3/2017 | $1,753 |
| 5/3/2017 | $1,753 |
| 6/3/2017 | $1,753 |
| 7/3/2017 | $1,753 |
| 8/3/2017 | $1,753 |
| 9/3/2017 | $1,753 |
| 10/3/2017 | $1,753 |
| 11/3/2017 | $1,753 |
| 12/3/2017 | $1,753 |
| 1/3/2018 | $1,767 |
| 2/3/2018 | $1,767 |
| 3/3/2018 | $1,767 |
| 4/3/2018 | $1,767 |
| 5/3/2018 | $1,767 |
| 6/3/2018 | $1,767 |
| 7/3/2018 | $1,767 |
| 8/3/2018 | $1,767 |
| 9/3/2018 | $1,767 |
| 10/3/2018 | $1,767 |
| 11/3/2018 | $1,767 |
| 12/3/2018 | $1,767 |
| 1/3/2019 | $1,818 |

Defendant's Initials _____          19

| | |
|---|---|
| 2/3/2019 | $1,818 |
| 3/3/2019 | $1,818 |
| 4/3/2019 | $1,818 |
| 5/3/2019 | $1,818 |
| 6/3/2019 | $1,818 |
| 7/3/2019 | $1,818 |
| 8/3/2019 | $1,818 |
| 9/3/2019 | $1,818 |
| 10/3/2019 | $1,818 |
| 11/3/2019 | $1,818 |
| 12/3/2019 | $1,818 |
| 1/3/2020 | $1,841 |
| 2/3/2020 | $1,841 |
| 3/3/2020 | $1,841 |
| 4/3/2020 | $1,841 |
| 5/3/2020 | $1,841 |
| 6/3/2020 | $1,841 |
| 7/3/2020 | $1,841 |
| 8/3/2020 | $1,841 |
| 9/3/2020 | $1,841 |
| 10/3/2020 | $1,841 |
| 11/3/2020 | $1,841 |
| 12/3/2020 | $1,841 |
| 1/3/2021 | $1,862 |
| 2/3/2021 | $1,862 |

$112,661

This money was the property of the United States. All the electronic deposits into E.D.'s bank account were identified by E.D.'s social security number and the phrase, "SSA TREAS . . . SSA." Dempsey was the only other signatory on E.D.'s bank account. On the day E.D. passed away, November 3, 2015, an SSA deposit was made into the account. The balance on this day was

Defendant's Initials _____          20

$38,568.51. The monetary SSA deposits confirmed until February 2021. By March 2021, the bank account was overdrawn.

Beginning the day of E.D. passed away, Dempsey spent SSA's money on restaurants, horse expenses, loans, and living expenses. She also took thousands of dollars in cash out of the account.

On March 21, 2022, an SSA-OIG special agent went to Dempsey's home to conduct a voluntary interview. Dempsey told the special agent that she used the SSA money in E.D.'s bank account because she was in a financial hole. She admitted that her actions were wrong because the money belonged to the government. She told the special agent that she had been worrying about getting in trouble every day, but she never notified anyone of her actions.

Not only did E.D.'s SSA benefits continue after his passing, but his United States Coast Guard (USCG) retirement benefits also continued as well. E.D.'s USCG benefits were electronically deposited into the same bank account as his SSA benefit. The USCG benefits should have stopped when E.D. passed away. Dempsey was not entitled to use the USCG benefits. Despite this legal prohibition, she used E.D.'s USCG benefits. The USCG benefits ceased in April 2020. In total, Dempsey unlawfully used $167,301.76 of the USCG benefits that were electronically deposited into E.D.'s accounts.

Defendant's Initials                    21